Bowen, J.
The first question of importance to decide, is whether the two thousand dollars, to be paid to the testator’s heirs by Nathaniel Truax, is a charge on the real estate devised to the latter, which may be enforced against those who have, for valuable considera tions, acquired titles from him?
The-language of the will discloses, satisfactorily, the intention of its author. His farm of 160 acres he was desirous of transmitting to his only son, provided the other members of his family should 102] share equally in its *« valuation.” It seems to have composed the principal part 'of his estate. He therefore first secures his widow, during her life, one-third of the land and of the personal property, and makes provision for her maintainance on the place, unless she shall prefer to live elsewhere; and Nathaniel is charged, in either event, with the duty of aiding in her support. This is an ■obligation enjoined on him by the will, and undoubtedly formed one -of the inducements of the testator to give him the farm. But after the mother’s death, which would relieve him from further care and .expense as to her maintenance, and the land from all incumbrance of the devisor, then he was to distribute to his five sisters two thousand dollars, less the one-sixth, which he as one of the devisees might retain. This, it' was doubtless supposed, would approach something like equality in the distribution of the estate. To accomplish that purpose seems to have been the object of making tbe testament. The price of the land is fixed. The widow is to hold one- *103 third of it during her life, and then its value is to be divided, equally, among the six children. Until that division was made the title of Nathaniel did not become perfect. The legacies operated as incumbrances upon it. The legatees could enforce their liens on the land, •and thereby divest his interest in it. While the estate was in this •condition the defendants, Dickey, Thompson, Higgins, and Levering, became purchasers from Nathaniel. They took the parcels by them respectively purchased subject to the unpaid legacies. The will had been proved and was of record, and was notice to them of the charge created upon it by the. testator. Morancy v. Quarles, 1 McLean, 194.
The counsel for defendants have cited, apparently with much reliance on its analogy to the present, the case of Coonrod v. Coonrod, 6 Ohio, 114. In that case the testator devised his estate, real and personal, to his son Henry, ^subject to a bequest of one thou- [103 sand dollars to his grand-daughter, to be paid to her at the age of eighteen years, in land, at such place as Ms son Henry could buy for her at its real value. The court held that this clause authorized the sale of the land ‘devised, and though chargeable with the payment of the legacy, while in the hands of the devisee, yet, the conveyance by him was compatible with the intentions of the will, and must be treated as valid in the hands of bona fide purchasers. The principle there settled is sound law, and not at variance with our present ruling.
The more recent case of Clyde v. Simpson et al., 4 Ohio St. 445, presents a very full and careful consideration of the subject, and the court arrive at the conclusion that express words are not necessary in a devise to charge pecuniary legacies upon real estate, but that an intention to do so may be derived by implication, and that where a devisee is required to pay legacies as a part consideration for the property, the law attaches an equitable lien on the land, for the security of the legatees, unless it clearly appears that the testator intended to exonerate the property from the charge. The principles settled in that case are peculiarly applicable to and decisive of this point in the present.
How shall the charge upon the land be canceled ? Shall the burden be borne by the several purchasers pro rata, or must payments be made by them according to the inverse order of time in which they acquired titles from Nathaniel?
The authorities upon this point are not uniform. In Kentucky ' *104, 105 the fro rata rule is adopted. Dickey v. Thompson, 8 B. Monroe, 312. In New York, the other rule is followed. The land last purchased is first liable to the incumbrance. Clowes v. Dickinson, 5 Johns. Ch. 235; 9 Conn. 403. The same doctrine prevails in 104] Pennsylvania. *The courts of that state have adhered to it with great tenacity. Cowden’s Estate, 1 Barr, 267. This case was ably considered, and while it reaffirms former decisions of the court against the application of the pro rata principle of contribution to purchasers of incumbered real estate, also holds the doctrine that there is no distinction, in this ¿particular, between mortgage, judgment, and testamentary liens; and that as between purchasers, they are all to have the same effect. It was a case of a charge upon real estate arising out of a will, and ¿presented the question of the order of liability of several purchasers of the incumbered ¿property acquiring their interest at different times. It was quite similar, in its main features, to the one now under consideration, and sustains fully the view we ex¿press.
In our own state the ease of the Commercial Bank of Lake Erie v. W. Reserve Bank, 11 Ohio, 444, adopts the decisions of New York and Pennsylvania, as to judgment liens, charging ¿posterior vendees, before resort can be had to those who are anterior, in ¿point of time, of the same incumbered estate. Begarding the question as settled by these, as well as by other adjudications on the subject, we feel no disposition, now, to de¿part from what we regard as sound ¿precedents.
A decree may, therefore, be taken for the complainants, for the respective amounts found due them by the master charging Elizabeth Nellons with interest on such sums as were ¿paid to her by Nathaniel before the mother’s death. The exce¿Ption to the master’s report, as to that item, is sustained. If the decree is not paid by Nathaniel Truax, in ninety days, it may be enforced against the land, in the inverse order of the dates of the purchases made by them. As to John Truax, the bill is dismissed.

Decree accordingly.

Swan, Brinkerhoee, and Scott, JJ., concurred.
*Bartlet, C. J., having' been of counsel in this ease, did not sit on the hearing of it. ■